# EXHIBIT A

**GUNN**

IN THE CIRCUIT COURT OF WASHINGTON COUNTY, ARKANSAS

SHARON ROLLER, VALERIE MURPHY,
and EMILY SMITH                                                          **PLAINTIFFS**

vs.                          Case No. CV 11-52-4

TV GUIDE ONLINE HOLDINGS, LLC                                **DEFENDANT**

## CLASS ACTION COMPLAINT

Come now Plaintiffs Sharon Roller, Valerie Murphy, and Emily Smith ("Plaintiffs"),

Individually and on behalf of a Class of Similarly Situated Individuals, and for their complaint

against Defendant TV Guide Online Holdings, LLC, ("TV Guide" or Defendant"), state the

following:

### Parties, Jurisdiction and Venue

1.      Plaintiffs are residents of Washington County, Arkansas.  A substantial part of the

events or omissions giving rise to Plaintiff's claim occurred in this jurisdiction.

2.      Defendant TV Guide provides local television listings, full episodes of favorite TV

shows, and breaking news on TV shows, celebrities and movies.  TV Guide is a Delaware

corporation with its principal place of business in Los Angeles, California.  TV Guide can be served

through its registered agent for service of process, The Corporation Trusts Company, Corporation

Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

3.      This Court has subject matter jurisdiction over this claim because the amount in

controversy exceeds the minimum jurisdictional limits of the Court.  Defendant is not an Arkansas

citizen for purposes of federal court diversity analysis.  However, no Plaintiff's or individual Class

Member's claim is equal to or greater than seventy-five thousand dollars ($75,000), inclusive of

Copy

costs and attorneys fees.  Moreover, the total damages of the Plaintiffs and Class, inclusive of costs and attorneys' fees, do not exceed five million dollars ($5,000,000), and the Plaintiffs and Class stipulate that they will not seek to recover an amount in excess of that amount.  As such, there is neither diversity nor Class Action Fairness Act jurisdiction for this claim in federal court.  Pursuant to Arkansas Rule of Civil Procedure 8(a), this pleading demands unliquidated damages.  Accordingly, it is intended, and shall by rule be interpreted, to limit recovery to an amount less than that required for diversity jurisdiction in federal court.

4.      This Court has personal jurisdiction over TV Guide pursuant to Arkansas Code Annotated § 16-4-101 as TV Guide has had more than minimum contact with the State of Arkansas and has availed itself of the privilege of conducting business in this state.  In addition, as explained below, TV Guide has committed affirmative acts within the State of Arkansas that give rise to civil liability.

5.      Venue is proper in this forum pursuant to Arkansas Code Annotated § 16-55-213(a) and § 5-41-105 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this county.[1]

## Factual Background

6.      This case is about TV Guide's intentional violation of the privacy rights of Plaintiffs and other Class Members by committing computer trespass and an unlawful act regarding a

---

[1] The Terms of Use for TV Guide purport to create exclusive venue and jurisdiction for claims, actions and disputes in Los Angeles, California.  This agreement fails for a number of reasons, including that the agreement only applies to TV Guide's "site".  The complaint made the basis of this complaint is not based on the "site."

2

Copy

computer in violation of Arkansas law. *See* Ark. Code Ann. § 5-41-101, *et seq.*; *see also* Ark. Code Ann. § 5-41-201 *et seq.* Each of the Plaintiffs own a computer that has been affected by TV Guide's wrongful conduct as described herein.

7.     Through its website www.tvguide.com, TV Guide uses "local shared objects," a/k/a "Flash cookies," to secretly access Plaintiffs' computers without their knowledge or consent and install computer codes designed to extract information and track Plaintiffs' activities across the World Wide Web.  Specifically, Plaintiffs allege that TV Guide has secretly, intentionally, and without authorization accessed and altered Plaintiffs' computers in order to acquire data about them and their activities. Further, TV Guide has intentionally implanted a "computer contaminate" into Plaintiffs' computers.

8.     Unlike traditional "HTTP cookies," "Flash cookies" cannot be deleted by the consumer without advanced technological know-how.  TV Guide does not disclose the existence or the use of Flash cookies on its website, privacy policies or terms of service.

9.     TV Guide's pervasive and clandestine actions in accessing Plaintiffs' computers in Arkansas, and its tracking of Plaintiffs' internet activity, violates Plaintiffs' reasonable expectations of privacy, as well as Arkansas civil and criminal law.  Further, Arkansas expressly recognizes that a violation of its criminal statutes prohibiting computer trespass gives rise to and affords Plaintiffs a civil right of action. *See* Ark. Code Ann. §§ 5-41-106, 16-118-107.

10.     Since the inception of the internet, companies with websites ("publisher"), companies that advertise on those websites ("advertisers") and online advertising agencies ("third-party ad servers") (collectively "Internet Companies") have sought ways to gather information about

consumers surfing the internet and track their browsing habits, preferences and tendencies.

11.    The goal of the Internet Companies is to deliver relevant content and advertising to the consumers, thereby increasing returns on their online advertising dollars.  Initially, Internet Companies used "HTTP cookies" to accomplish this objective.  HTTP cookies are small pieces of computer code installed on a user's computer by a web browser.  HTTP cookies provided data about the user and allowed Internet Companies to track the user's activities across the internet.

12.    Soon after discovering that their privacy was being invaded and their internet activities were being tracked, consumers demanded their privacy and lobbied for ways in which they could disable, delete, or opt out of the use of HTTP cookies.  As a result, it is now possible on virtually every internet browser to disable, delete, or clear HTTP cookies and to "browse privately."

13.    In response to consumers' asserting their privacy rights, and because data about consumer's activities on the internet is too valuable to pass up, Internet Companies, including TV Guide, have attempted to increase the reliability of tracking methods.  They developed a backup ID system for cookies set by web sites, ad networks, and advertisers, but increasingly deleted by users.

14.    This backup ID system is called a "Persistent Identification Element," a "Local Shared Object" or a "Flash cookie," and it is installed without the knowledge and consent of consumers. By misusing the Adobe Flash multimedia platform (which virtually all websites use for animating their content, including advertisements), Internet Companies, including TV Guide, insert Flash cookies on users' computers in order to gather information about users and track their internet activities -- even those who believe they are not being tracked because they have disabled, deleted, or cleared HTTP cookies.  By engaging in such conduct, Internet Companies, including TV Guide,

4

Copy

commit computer trespass and engage in unlawful acts regarding a computer and unlawful

interference with access to computers - unlawful use or access to computers.

15.     As reported in the study Flash Cookies and Privacy[2]:

> Flash cookies offer several advantages that lead to more persistence than
> standard HTTP cookies.  Flash cookies can contain up to 100KB of
> information be default (HTTP cookies can only store 4KB.)  Flash cookies
> do not have expiration dates by default, whereas HTTP cookies expire at the
> end of a session unless programmed to live longer by the domain setting the
> cookie.  Flash cookies are stored in a different location that HTTP cookies,
> thus users may not know what files to delete in order to eliminate them.
> Additionally, they are stored so that different browsers and stand-alone Flash
> widgets installed on a given computer access the same persistent Flash
> cookies.  Flash cookies are not controlled by the browser.  Thus erasing
> HTTP cookies, clearing history, erasing cache, or choosing a delete private
> data option within the browser does not affect Flash cookies.  Even the
> "Private Browsing" mode recently added to most browsers such as Internet
> Explorer 8 and Firefox 3 still allows Flash cookies to operate fully and track
> the user.  These differences make Flash cookies a more resilient technology
> for tracking that HTTP cookies, and creates an area for uncertainty for user
> privacy control.

16.     When consumers became aware of one tracking method, the Internet Companies,

including TV Guide, manipulated technology in order to keep tracking Plaintiffs without their

knowledge and consent in violation of Arkansas law.  In order to ensure consumers are unable to

avoid being tracked, Internet Companies store the same code or "values" in both HTTP and Flash

Cookies. This allows Flash Cookies to "respawn" or recreate deleted HTTP cookies. According to

Soltani *et al*, "this means that privacy-sensitive consumers who 'toss' their HTTP cookies to prevent

---

[2] Soltani, Ashkan, Canty, Shannon, Mayo, Quentin, Thomas Lauren and Hoofnagle, Chris
Jay, Flash Cookies and Privacy (August 10, 2009).  See http://ssrn.com/abstract=144862.

tracking or remain anonymous are still being uniquely identified on line by advertising companies."[3]

17.    Even if consumers delete their HTTP cookies, they can still be tracked and information can still be gathered about them using Flash cookies and/or regenerated HTTP cookies. TV Guide engaged in such conduct to hide its information-gathering activity from Plaintiffs.

18.    Few websites, including www.tvguide.com, disclose their use of Flash cookies on their websites, in their privacy policies or in the site's terms of service. For consumers, this means they are being tracked by a technology without their knowledge or consent.

19.    Even if a particular Internet Company discloses its use of Flash cookies somewhere on its website or in its privacy policy, that disclosure does not prevent that Internet Company from embedding a Flash cookie without the consumer's consent. "A Flash cookie can be set when a website embeds first party or third party Flash content on a page. Thus, merely visiting some websites (without actually clicking on an advertisement or video) can cause Flash data from a third party advertiser to be stored on the user's computer, often unbeknownst to the user." [4]

20.    Moreover, even if an Internet Company discloses somewhere on its website that it is using Flash cookies, many sites install Flash cookies on users' computers as soon as they visit the site before the user even has the opportunity to review the sites' privacy policy and/or agree to the use of Flash cookies. This is exactly what happens on www.tvguide.com.

21.    As Soltani, *et al.* explain, "Given the different storage characteristics of Flash cookies, without disclosure of Flash cookies in a privacy policy, it is unclear how the average user

---

[3] *Id.*

[4] *Id.*

Copy

would even know of the technology.  This would make privacy self-help impossible except for

sophisticated users." [5]

22.    For example:

> [W]hen a user visits particular websites or reads particular content,
> [advertisers] will try to serve ads to that user that matches their content
> browsing preferences.  The preferences are not consciously or explicitly set
> by the user but modeled after the user's browsing history, page viewing, and
> ad clicking history.  Accordingly, when a user reads 'dog training' pages and
> moves on to another [page] that might not be related to dog training, dog
> training ads might follow the user to the new page.  There is no obvious
> notice or notification sent to the user that the user's actions online are being
> tracked for ad-serving purposes. [6]

23.    Even when Internet Companies claim they disclose the use of Flash cookies in their

terms of service or privacy policies, those policies are often cryptic and lack full disclosure.  As

noted by one commentator, "those who seek out information in privacy policies often come up

against complicated legalese." [7]

24.    A United States Congressman from Massachusetts concerned about the use of Flash

cookies recently noted that, while privacy policies and opt-out choices supposedly enable consumer

to preserve their privacy, "these policies can be complicated and laborious to navigate. . . . In some

cases, a list of all third party affiliates is not readily accessible, keeping consumers in the dark." [8]

---

[5]  *Id.*

[6]  http://www.allaboutcookies.org/privacy-concerns/index.html

[7]  http://arstechnica.com/web/news/2010/10/internet-sites-we-use-flash-cookies-but-only-
nice-ones.ars

[8]  *Id.*

Copy

25.     Adobe Systems Inc., the owner of the Flash technology, has itself acknowledged the harm caused by Flash cookies.  In a letter to the Federal Trade Commission in January 2010, Adobe's Associate General Counsel and Privacy Officer wrote that:

> [T]he practice of using Local Storage to back up browser cookies for the purpose of restoring them after they have been deleted by the user is inconsistent with the user's expectations and happens without the user's knowledge and express consent.
>
> Adobe condemns the practice of using Local Storage to back up browser cookies for the purpose of restoring them later without user knowledge and express consent. [9]

26.     Once Internet Companies collect data about internet users' browsing habits, preferences, and tendencies, these companies, including, on information and belief, TV Guide, monetize the information because it is very valuable.

27.     Internet Companies, including TV Guide, on information and belief, buy and sell the data they collect online.  The market for this information is so robust that exchanges have been established where Internet Companies can quickly and efficiently buy and sell the information they have gathered by invading consumers' privacy rights.

28.     www.Bluekai.com is one such online marketplace.  Bluekai.com claims to be the "largest data auction marketplace with exclusive access to premium data sources on over 200M consumers." Bluekai.com "creates a centralized marketplace for data buying and selling where price of data is bid up by performance and demand.  This auction model rewards quality and ensures maximum yield from your data."

---

[9] http://www.ftc.gov/os/comments/privacyroundtable/544506-00085.pdf

29.     Armed with the knowledge that the data they collect from unsuspecting internet users is worth so much and can increase the efficacy of its advertising, TV Guide used Flash cookies to access computers in the State of Arkansas owned by Plaintiffs to collect valuable data without their knowledge and consent.  TV Guide's actions in this regard were in violation of Plaintiffs' privacy rights under Arkansas law.

## Miscellaneous

30.     The facts complained of herein occurred within the three years preceding the filing of this lawsuit.

31.     Any condition precedent to the institution of this lawsuit has been performed, has occurred, or has been waived.

## Class Action Allegations

32.     Pursuant to Arkansas Rule of Civil Procedure 23, Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated.  This action satisfies the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, and the Rule 23(b) requirement of predominance, and superiority.

33.     The proposed Class which Plaintiffs seek to represent in this action is defined as follows:

> All Arkansas residents whose computers, computer systems, computer networks, computer programs, and/or data located in Arkansas (I) were accessed and/or altered by Defendant TV Guide in the three years preceding the date of filing of this Complaint and/or (ii) had a computer contaminant introduced, caused to be introduced and/or attempted to be introduced by Defendant TV Guide in the three years preceding the date of filing of this Complaint.

Excluded from the Class definition are: (1) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (2) any entity in which Defendant TV Guide as a controlling interest, to include, but not limited to, their legal representative, heirs, and successors; (3) all persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (4) any Judge in the lawsuit and/or persons within the third degree of consanguinity to such judge.

34.     Upon information and belief, the Class is compromised of over one thousand persons located in the State of Arkansas. It is therefore impractical to bring all members of the Class before the Court individually.

35.     There exist questions of law and fact common to all members of the Class. These common questions of law and fact predominate over any individual questions affecting Class Members. Common legal and factual questions include, but are not limited to, the following:

A.     Whether Defendant accessed and altered Plaintiffs' and Class Members' computers;

B.     Whether Defendant acted with intent;

C.     Whether Defendant had authorization to access and alter Plaintiffs' and Class Members' computers;

D.     Whether Plaintiffs and the Class Members are entitled to compensatory damages, and the amount of such damages; and

E.     Whether Plaintiffs and the Class Members are entitled to other relief, and the scope and nature of such relief.

36.     The claims of the representative Plaintiffs are typical of the claims of the Class in that:

A.     Plaintiffs' computers, like the computers of all Class Members, was accessed and altered by Defendant;

10

Copy

    B.     Plaintiffs, like all Class Members, have been damaged by Defendant's unlawful misconduct; and

    C.     The factual bases and cause of action for the claim Plaintiffs assert are common to all Class Members and represent a common thread of misconduct resulting in injury to all Class Members.

37.    Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have no interests which conflict with the Class, and have retained attorneys who are experienced in the prosecution of complex consumer class action litigation involving computers and the internet.

38.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joining all members in impracticable, and this action will be manageable as a class action. There will be no difficulty in the management of this class action.

39.    Prosecuting individual actions would unduly increase the cost of litigation and cause delay, not only to Plaintiffs and Class Members, but also to TV Guide and the Court.

40.    In contrast, a class action will avoid case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of each Plaintiff and Class Member. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

41.    Class treatment of the claims asserted by Plaintiffs is superior to other methods of adjudicating the claims of the Class in that:

    A.     The prosecution of separate actions by individual members of the class would create a foreseeable risk of inconsistent or varying adjudications which would establish incompatible results and standards of conduct for Defendant;

    B.     Adjudications with respect to individual members of the Class which

11

Copy

would, as a practical matter, be dispositive of the interests of the other members not parties to the separate adjudications or would substantially impair or impede their ability to protect their own interests; and

C.   Class action treatment avoids the waste and duplication inherent in numerous individual actions and conserves the resources of the Courts.

### Count I – Computer Trespass in Violation of Arkansas Law

42.   Plaintiffs incorporate paragraphs 1-41, as if fully set out herein.

43.   Defendant TV Guide intentionally and without authorization accessed and altered Plaintiffs' computers, computer systems, computer networks, computer programs, and/or data by embedding Flash cookies on their computers, computer systems, computer networks, computer programs, and/or data.  Defendant TV Guide's conduct as set forth herein constitutes computer trespass in violation of Arkansas Code Annotated § 5-41-101, *et seq.* and other applicable Arkansas law.

44.   Plaintiffs have the right under Arkansas law to assert civil claims for relief as a result of TV Guide's wrongful conduct pursuant to Arkansas Code Annotated § 5-41-101, *et seq.* and other applicable Arkansas law.

45.   As a result of the foregoing, Plaintiffs were injured in their property or person and sustained damages in an amount to be proven at trial.

46.   This legal proceeding should be conducted in such a way as to protect the secrecy and security of Plaintiffs' computers, computer systems, computer networks, computer programs, and/or data in order to prevent possible recurrence of the same or similar acts by another person.

**Count II – Unlawful Act Regarding A Computer in Violation of Arkansas Law**

47.     Plaintiffs incorporate paragraphs 1-46, as if fully set out herein.

48.     In the alternative to any foregoing cause of action, Defendant TV Guide knowingly and without authorization introduced, caused to be introduced or attempted to introduce a computer contaminant into a computer, network or data belonging to Plaintiffs and Class Members. TV Guide's conduct as set forth herein constitutes an unlawful act regarding a computer in violation of Arkansas Code Annotated. § 5-41-201, *et seq*., and other applicable Arkansas law.

49.     Plaintiffs and Class Members have the right under Arkansas law to assert civil claims for relief as a result of TV Guide's wrongful conduct pursuant to Arkansas Code Annotated § 5-41-201, *et seq*. and other applicable Arkansas law.

50.     As a result of the foregoing, Plaintiffs and Class Members were injured in their property or person and sustained damages in an amount to be proven at trial.

**Count III – Unjust Enrichment in Violation of Arkansas Law**

51.     Plaintiffs incorporate paragraphs 1-50, as if fully set out herein.

52.     In the alternative to any foregoing cause of action, by selling or using data acquired from Plaintiffs' and Class Members' computers, Defendant TV Guide has received and continues to receive money to which it is not entitled.  This money should be restored to Plaintiffs and Class Members.

53.     The enrichment of Defendant TV Guide by selling or using data acquired from Plaintiffs and Class Members is unjust and inequitable because TV Guide is acquiring such data by computer trespass in violation of Plaintiffs' and Class Members' privacy rights under Arkansas law.

54.     This unjust enrichment of Defendant TV Guide was and is at the expense of or

13

Copy

detriment to Plaintiffs and Class Members.

### Count IV - Civil Conspiracy in Violation of Arkansas Law

55.     Plaintiffs incorporate paragraphs 1 - 54 as if fully set out herein.

56.     In the alternative to any foregoing cause of action, Defendant conspired with others to access Plaintiffs' and Class Members' computers and to obtain information.  Defendant has conspired to withhold from the Plaintiffs, the Class and the public information about the true nature and purpose of these embedded programs, what private information is conveyed to the creators of the applications and third parties, and what private information Defendant obtains and uses for its own financial benefit.

57.     As a direct and proximate result of Defendant's conspiracy with unnamed co-conspirators, Plaintiffs and Class Members have been misled, defrauded, and deprived of their private information.  Defendant's conduct was wrongful and immoral and the manner in which it was obtained was likewise wrongful and immoral.

58.     Defendant should be held jointly and severally liable for Plaintiffs' and Class Members' damages sustained as a result of the unlawful conspiracy with unnamed co-conspirators. Defendant was aware that its participation in the unlawful scheme resulted in a breach of Arkansas law and invasion of privacy rights. As such, Defendant is liable for the wrongful conduct of each of its co-conspirators and subsequent damage to each Plaintiff and Class Member.

59.     The conduct of Defendant was intentional, willful, malicious and/or in reckless disregard of the rights of others.

Wherefore, Plaintiffs, individually and as Class Representatives on behalf of all similarly situated persons and/or entities, pray the Court grant certification of this case as a class action

14

pursuant to Arkansas Rule of Civil Procedure 23; appoint Plaintiffs as Class Representatives and Plaintiffs' counsel as Class counsel; award appropriate monetary damages to Plaintiffs and the proposed Class in an amount sufficient to compensate them for Defendant TV Guide's unjust enrichment, which, when aggregated with all other elements of damages, costs, and fees, will not exceed $75,000.00, per class member and/or $5,000,000.00 for the entire class; award prejudgment interest in order to prevent TV Guide from receiving unjust enrichment for its improper conduct, which, collectively with all other elements of damages, cost, and fees will not exceed $75,000.00, per class member and/or $5,000,000.00 for the entire class; award reasonable and necessary attorneys' fees and costs to Class counsel, which, collectively with all other elements of damages, costs, and fees will not exceed $75,000.00 per class member and/or $5,000,000.00 for the entire class; award such additional relief in law or in equity as the Court determines fair, reasonable and appropriate, which, collectively with all other elements of damages, costs, and fees will not exceed $75,000.00, per class member and/or $5,000,000.00 for the entire class; and award any and all further relief to which Plaintiffs and Class Members may prove themselves entitled to under Arkansas Law.

**Plaintiffs Sharon Roller, Valerie Murphy and Emily Smith, Individually, and on Behalf of a Class of Similarly Situated Individuals, Plaintiffs**

By:_____

W. H. Taylor, #81154
William B. Putman, #91198
Taylor Law Partners
303 E. Millsap Road
P. O. Box 8310
Fayetteville, AR 72703
Telephone:    (479) 443-5222
Facsimile:    (479) 443-7842

15

Copy

Matt Keil, #86099
John C. Goodson, #90018
Keil & Goodson P.A.
406 Walnut Street
Texarkana, Arkansas 71854
Telephone:      (870) 772-4113
Facsimile:      (870) 773-2967

**Sworn and Binding Stipulation**

Before me, the undersigned authority on this day personally appeared Valerie Murphy,

known to me to be the undersigned Affiant whose name is subscribed below, who, after having been

duly sworn by me, upon her oath deposed and stated as follows:

1. My name is Valerie Murphy.  I am a plaintiff in this lawsuit.  I am over the age of eighteen.  I am of sound mind, capable of making this affidavit, fully competent to testify to the matters stated herein, and am under no legal disability.  I have personal knowledge of the facts and statements contained herein, and of the facts and statements are true and correct.

2. I do hereby swear and affirm that I do not now, and will not at any time during this case, whether it be removed, remanded, or otherwise, seek damages for myself or any other individual class member in excess of $75,000 (inclusive of costs and attorneys' fees) or seek damages for the class as alleged in the complaint to which this stipulation is attached in excess of $5,000,000 in the aggregate (inclusive of costs and attorneys' fees).

3. I understand that this stipulation is binding, and it is my intent to be bound by it.

Further affiant sayeth not.


_Valerie K Murphy_
Valerie Murphy


SUBSCRIBED AND SWORN TO BEFORE ME, to which witness my hand and official seal on this the __5__ day of __JANUARY__, 2011.   _Melissa Austin_
Notary Public
My Commission Expires: __11-11-2020__

17

### Sworn and Binding Stipulation

Before me, the undersigned authority on this day personally appeared Sharon Roller, known to me to be the undersigned Affiant whose name is subscribed below, who, after having been duly sworn by me, upon her oath deposed and stated as follows:

1. My name is Sharon Roller. I am a plaintiff in this lawsuit. I am over the age of eighteen. I am of sound mind, capable of making this affidavit, fully competent to testify to the matters stated herein, and am under no legal disability. I have personal knowledge of the facts and statements contained herein, and of the facts and statements are true and correct.

2. I do hereby swear and affirm that I do not now, and will not at any time during this case, whether it be removed, remanded, or otherwise, seek damages for myself or any other individual class member in excess of $75,000 (inclusive of costs and attorneys' fees) or seek damages for the class as alleged in the complaint to which this stipulation is attached in excess of $5,000,000 in the aggregate (inclusive of costs and attorneys' fees).

3. I understand that this stipulation is binding, and it is my intent to be bound by it.

Further affiant sayeth not.

_Sharon Roller_
Sharon Roller

SUBSCRIBED AND SWORN TO BEFORE ME, to which witness my hand and official seal on this the _10th_ day of _January_, 2011.

_Melissa Austin_
Notary Public
My Commission Expires: _11-11-2020_

18

Copy

## Sworn and Binding Stipulation

Before me, the undersigned authority on this day personally appeared Emily Smith, known to me to be the undersigned Affiant whose name is subscribed below, who, after having been duly sworn by me, upon her oath deposed and stated as follows:

1.   My name is Emily Smith.  I am a plaintiff in this lawsuit.  I am over the age of eighteen.  I am of sound mind, capable of making this affidavit, fully competent to testify to the matters stated herein, and am under no legal disability.  I have personal knowledge of the facts and statements contained herein, and of the facts and statements are true and correct.

2.   I do hereby swear and affirm that I do not now, and will not at any time during this case, whether it be removed, remanded, or otherwise, seek damages for myself or any other individual class member in excess of $75,000 (inclusive of costs and attorneys' fees) or seek damages for the class as alleged in the complaint to which this stipulation is attached in excess of $5,000,000 in the aggregate (inclusive of costs and attorneys' fees).

3.   I understand that this stipulation is binding, and it is my intent to be bound by it.

Further affiant sayeth not.

_____
Emily Smith

SUBSCRIBED AND SWORN TO BEFORE ME, to which witness my hand and official seal on this the ___ day of _____, 2011.

_____
Notary Public
My Commission Expires: _11-11-2020_

19

Copy

### Sworn and Binding Stipulation

Before me, the undersigned authority on this day personally appeared William B. Putman, known to me to be the undersigned Affiant whose name is subscribed below, who, after having been duly sworn by me, upon his oath deposed and stated as follows:

1. My name is William B. Putman. I am plaintiffs' and putative class counsel in this lawsuit. I am over the age of eighteen; I am of sound mind, capable of making this affidavit, fully competent to testify to the matters stated herein, and am under no legal disability. I have personal knowledge of the facts and statements contained herein, and of the facts and statements are true and correct.

2. I do hereby swear and affirm that I do not now, and will not at any time during this case, whether it be removed, remanded, or otherwise, as counsel in this case seek damages for any individual class member in excess of $75,000 (inclusive of costs and attorneys' fees) or seek damages for the class as alleged in the complaint to which this stipulation is attached in excess of $5,000,000 in the aggregate (inclusive of costs and attorneys' fees).

3. I understand that this stipulation is binding, and it is my intent to be bound by it.

Further affiant sayeth not.

William B. Putman

SUBSCRIBED AND SWORN TO BEFORE ME, to which witness my hand and official seal on this the _5_ day of _January_, 2011.

Notary Public

My Commission Expires: _11-11-20__

20